Jonathan M. Lebe (State Bar No. 284605)
Jon@lebelaw.com
Zachary Gershman (State Bar No. 328004)
Zachary@lebelaw.com
**Lebe Law, APLC**
777 S. Alameda Street, Second Floor
Los Angeles, CA 90021
Telephone: (213) 444-1973
Facsimile: (213) 457-3092

Attorneys for Plaintiff Tiara Billups-Larkin

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tiara Billups-Larkin, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Aramark Services, Inc.,<br><br>Defendant. | Case No.: 3:21-cv-06852-RS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:  Hon. Richard Seeborg<br>Date:   June 22, 2023<br>Time:   1:30 p.m.<br>Dept.:  3<br><br>Complaint Filed:   June 16, 2021<br>Trial Date:        None Set |

**NOTICE IS HEREBY GIVEN** that on June 22, 2023 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 3 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Richard Seeborg, Plaintiff Tiara Billups-Larkin, as an individual and on behalf of all others similarly situated, will and hereby does move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e) and 29 U.S.C. § 216(b):

1. Preliminarily certifying under Rule 23(e) of the Federal Rules of Civil Procedure, the proposed Settlement Class, which includes the following individuals:

   > All current and former non-exempt employees who worked for
   > Defendants for the Corrections line of business at any time between
   > December 19, 2016, and December 15, 2022 in the State of California.

2. Preliminarily appointing Tiara Billups-Larkin as the Class Representative for settlement purposes;

3. Preliminarily appointing Jonathan M. Lebe and Zachary Gershman of Lebe Law, APLC, as Class Counsel for settlement purposes;

4. Preliminarily approving the class action settlement based upon the terms set forth in the Class and PAGA Representative Action Settlement Agreement (the "Settlement");

5. Appointing Phoenix Settlement Administrators as the third-party settlement administrator for mailing notices and otherwise administering the Settlement;

6. Approving the proposed Class Notice, and directing that it be disseminated to the proposed Settlement Class as provided in the Settlement; and

7. Scheduling a final fairness hearing to consider final approval of the Settlement, entry of a proposed final judgment, Plaintiff's Motion for Reasonable Attorneys' Fees and Costs, and the Class Representative's Service Award.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the declaration of Jonathan M. Lebe and exhibits attached thereto, the declaration of

Plaintiff, and the exhibits attached thereto, the pleadings and other papers filed in this action, and on any further oral or documentary evidence or argument presented at the time of hearing.

Dated:  May 18, 2023                    **LEBE LAW, APLC**


By:     /s/ Jonathan M. Lebe
        Jonathan M. Lebe
        Zachary T. Gershman
        Attorneys for Plaintiff Tiara Billups-Larkin

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL SUMMARY .................................................................................. 2

  A.   Plaintiff's Claims And Procedural History ................................................ 2

III.  THE SETTLEMENT MERITS PRELIMINARY APPROVAL ....................... 3

  A.   The Settlement Is Fair, Reasonable, and Adequate ................................. 3

    1.   The Strength of Plaintiff's Case ......................................................... 4

    2.   Risk, Expense and Duration of Further Litigation .............................. 4

    3.   Risk of Maintaining Class Action Status ............................................ 4

    4.   The Amount of Settlement is Reasonable and Significant .................. 4

  B.   The Preliminary Approval Standard Is Met .............................................. 11

    1.   The Settlement is Within the Range of Possible Approval ................. 11

    2.   The Settlement Resulted From Arm's-Length Negotiations ............... 11

    3.   The Settlement is Devoid of Obvious Deficiencies ............................ 12

      a.Settlement Provides Significant Monetary Recovery ...................... 12

      b. Settlement Formula ........................................................................ 12

      c.Incentive Payment, Attorneys' Fees, and Costs ............................. 13

IV.   THE SETTLEMENT MERITS CERTIFICATION ......................................... 16

  A.   Rule 23(a)(1) Numerosity Is Satisfied ..................................................... 16

  B.   Rule 23(a)(2) Commonality Is Satisfied ................................................... 16

  C.   Rule 23(a)(3) Typicality Is Satisfied ........................................................ 16

  D.   Rule 23(a)(4) Adequacy Is Satisfied ........................................................ 16

  E.   Rule 23(b)(3) Predominance Is Satisfied ................................................. 17

  F.   The *Bluetooth* Factors Are Satisfied ....................................................... 17

V.    THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS ............. 18

VI.   CONCLUSION............................................................................................... 19

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

# TABLE OF AUTHORITIES

**Federal Cases**

*Amchem v. Windsor*, 521 U.S. 591 (1997).................................................................17

*Brawner v. Bank of Am. N.A.*, 2016 U.S. Dist. LEXIS 4975 (N.D.Cal. Jan. 14, 2016)...............15

*Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021).................................................18

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004)...........................18

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...........................................11

*Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...........................15

*Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 U.S. Dist. LEXIS 166484 (N.D. Cal. Dec. 11, 2015) ...........................................................................................15

*Dunleavy v. Nadler*, 213 F.3d 454 (9th Cir. 2000) ...................................................10

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974)..................................................18

*Farrar v. Hobby*, 506 U.S. 103, 111 (1992) ..........................................................14

*Fleming v. Covidien, Inc.*, No. ED CV10-01487 RGK (OPx), 2011 U.S. Dist. LEXIS 154590 (C.D. Cal. Aug. 12, 2011)..............................................................................9

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) ............................................3

*Gribble v. Cool Transports Inc.*, 2008 U.S. Dist. LEXIS 115560 (C.D. Cal. Dec. 15, 2008)......11

*Guerrero v. United States Gypsum Co.*, 2022 U.S. Dist. LEXIS 233930 (S.D. Cal. Dec, 30, 2022) .................................................................................................14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................16, 17

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL DOCKET No. 901 ALL CASES, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992)...........................................11

*In re Pac. Enter. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)............................................11

*In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007)  4

*Jones v. GN Netcom, Inc. ("In Re Bluetooth")*, 654 F.3d 935 (9th Cir., 2011) ..............15, 17, 18

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083 (9th Cir. 2010) ...................................................................................................14

*Leyva v. Medline Indus., Inc.*, 716 F.3d 510 (9th Cir. 2013).........................................17

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)....................10

*Patel v. Nike Retail Svcs., Inc.*, 58 F.Supp.3d 1032 (N.D. Cal. 2014) ...........................................8

*Rodriguez v. West Publishing Corp.,* 563 F.3d 948 (9th Cir. 2003) ....................................................3

*Schiller v. David's Bridal*, 2012 U.S. Dist. LEXIS 80776 (E.D. Cal. June 11, 2012) ...............12

*Sorenson v. PetSmart, Inc.,* No. 2:06-CV-02674 (E.D. Cal. Dec. 17, 2008)...............................12

*Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294 (N.D. Cal. 1995)....................................14

*Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759 (N.D. Cal.

Oct. 11, 2016) ...........................................................................................................................10

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)..........................................................15

**State Cases**

*Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (2008) ........................................................8

*Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004 (2012) ....................................6, 7

*Carrington v. Starbucks Corp.*, 30 Cal.App.5th 504 (2018)...........................................................9

*Cellphone Termination Fee Cases*, 186 Cal. App.4th 1380 (2010)..............................................14

*Clark v. Am. Residential Services LLC*, 175 Cal. App. 4th 785 (2009).......................................14

*Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal.4th 554 (2007) ...................................................7

*Kao v. Joy Holiday,* 12 Cal.App.5th 947 (2017) ..............................................................................7

*Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308 (2018) ...............................................8

*Price v. Starbucks Corp.*, 192 Cal.App.4th 1136 (2011)................................................................8

*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112 (2012) ...................................9

*Wesson v. Staples the Office Superstore, LLC*, 68 Cal.App.5th 746 (2021)..................................9

*ZB, N.A. v. Sup. Ct.*, 8 Cal.5th 175 (2019) .....................................................................................9

**Statutes**

8 Cal. Code Regs. § 13520...............................................................................................................7

Cal. Labor Code § 226(e)................................................................................................................7

Lab. Code § 2699(e)(2) ...................................................................................................................9

Labor Code § 2699(i)....................................................................................................................13

**Other Authorities**

Manual for Complex Litigation § 30.41 (3rd Ed. 1995).............................................................3, 11

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

**Rules**

Fed. R. Civ. Proc. 23(e)(2)..........................................................................................3

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Tiara Billups-Larkin ("Plaintiff"), individually on behalf of the proposed settlement class, requests that this Court preliminarily approve the  Class and PAGA Representative Action Settlement Agreement ("Settlement") entered into by and between Plaintiff and Defendant Aramark Services, Inc. ("Aramark").[1]

Plaintiff's claims stem from Aramark's alleged failure to pay minimum and overtime wages, unlawful deduction of wages, meal and rest period violations, failure to reimburse necessary business expenses, failure to furnish accurate wage statements, and failure to timely pay final wages.  Specifically, Plaintiff alleges that she and other employees were unable to leave Aramark's premises during meal and rest breaks, and thus were not relieved of all duties.  Under the Settlement, Aramark has agreed to pay a <u>non-reversionary</u> Maximum Gross Settlement Amount ("GSA") of **$460,000** to resolve Plaintiff's and Settlement Class members' claims on a class and representative basis.  Declaration of Jonathan M. Lebe ("Lebe Decl."), ¶ 21, Exhibit D ("Settlement"), §§ 3.3 and 3.4.  After deductions for Court-approved attorneys' fees and costs, the Class Representative Enhancement Award, and the PAGA payment, the Net Settlement Amount shall be paid to all Participating Class Members, based on their respective number of workweeks worked during the Class Period. *Id.*, §§ 1.20 and 3.4.4.

This proposed settlement came to fruition only after robust legal research and analysis, extensive investigation by the parties and by Class Counsel, the exchange of extensive class-wide data and analysis of that data, arm's-length settlement negotiations at a private mediation session with Lisa Klerman, Esq., an experienced wage and hour class action mediator, as well as extensive negotiations after the mediation, which eventually led to the settlement.  Lebe Decl., ¶ 20.

This settlement provides substantial recovery on Aramark's alleged wage and hour violations.  The estimated average, net individual settlement payment is projected at **$307.38 per class member**, a favorable result considering the formidable defenses that Defendant mounted in this action.  Lebe Decl., ¶ 31.  Based on the litigation risks involved, Plaintiff submits the proposed

---

[1] The Settlement Agreement is attached as Exhibit D to the Declaration of Jonathan M. Lebe ("Lebe Decl."). The proposed Class Notice is attached as Exhibit A to the Settlement Agreement.

Settlement is well within the range of possible approval. Moreover, the Settlement is the product of an informed and thoroughly vetted analysis of the claims and defenses, as well as the likelihood of obtaining class certification, and arm's-length settlement negotiations by experienced employment counsel.

Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the proposed settlement.

## II.   FACTUAL SUMMARY

### A.   Plaintiff's Claims and Procedural History

On June 16, 2021, Tiara Billups-Larkin submitted her PAGA notice to the Labor Workforce Development Agency. Declaration of Lebe Decl., ¶ 18. On the same day, she filed her original Complaint in Alameda Superior Court. *Id.* The original Complaint alleged causes of action as a class action for violations of the California Labor code and applicable IWC Wage Order: (1) Failure to Pay Minimum Wages in Violation of Cal. Labor Code §§ 1194, 1194.2, and 1197; (2) Failure to Pay Overtime Wages in Violation of Cal. Labor Code §§ 510, 1194, and 1198; (3) Unlawful Deduction of Wages in Violation of Cal. Labor Code § 221; (4) Failure to Provide Meal Periods in Violation of Cal. Labor Code §§ 226.7 and 512; (5) Failure to Provide Rest Breaks in Violation of Cal. Labor Code § 226.7; (6) Failure to Provide Accurate Itemized Wage Statements in Violation of Cal. Labor Code § 226; (7) Failure to Reimburse All Business Expenses in Violation of Cal. Labor Code §§ 2800 and 2802; (8) Failure to Timely Pay All Wages Due Upon Separation of Employment in Violation of Cal. Labor Code §§ 201-203; and (9) Violation of Business and Professions Code §§ 17200, *et seq. Id.*

On September 2, 2021, Aramark filed its Notice of Removal to the Northern District of California. Lebe Decl. ¶ 19, Exhibit A. On December 8, 2021, the parties jointly stipulated to allow Plaintiff to file a First Amended Class and Representative Action Complaint, adding a cause of action for civil penalties pursuant to PAGA, and removing the Doe defendants in accordance with pleading standards in the Northern District Court of California. *Id.*, Exhibit B. On December 28, 2021, Aramark filed its Answer to Plaintiff's First Amended Class and Representative Action Complaint. *Id.*, Exhibit C.

1   On September 9, 2022, after months of engaging in robust legal research and analysis,

2   extensive investigation by the parties and by Class Counsel, the exchange of extensive class-wide

3   data and analysis of that data, motion practice, and extensive litigation where preparation for class

4   certification and trial remained for the parties, as well as the prospect of potential appeals, the

5   parties participated in an arm's-length mediation with Lisa Klerman, Esq., an experienced wage

6   and hour class action mediator.  Lebe Decl., ¶ 20.  Although the case did not settle at mediation,

7   Ms. Klerman made a mediator's proposal that was ultimately accepted by the parties.  *Id*.  The

8   parties participated in extensive negotiations over the following months to finalize the finer points

9   of the Settlement Agreement that is now before the Court.  *Id*.

10  **III.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

11  It is the policy of the federal courts to encourage settlement.  *See Franklin v. Kaypro*

12  *Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989).  Judicial approval of a class action settlement entails

13  a two-step process: (1) an early (preliminary) review by the Court; and (2) a final review after

14  notice has been distributed to the class members for their comment or objections.  *See* Manual for

15  Complex Litigation § 30.41 (3ʳᵈ Ed. 1995).

16  **A.    The Settlement Is Fair, Reasonable, and Adequate**

17  To receive judicial approval, a proposed class action settlement must be "fair, reasonable,

18  and adequate."  *See* Fed. R. Civ. Proc. 23(e)(2).  In making this determination, this Court may

19  consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense,

20  complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

21  throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and

22  the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

23  governmental participant; and (8) the reaction of the class members to the proposed settlement.

24  *See Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 963 (9th Cir. 2003).  Plaintiff addresses

25  each relevant factor below.[2]

26

27  _____

28  [2] Because there are no government participants in the instant lawsuit, other than to the extent the
Labor and Workforce Development Agency declines to oppose the PAGA portion of the
settlement, Plaintiff has omitted the seventh factor from discussion.  Should the Court grant

### 1. The Strength of Plaintiff's Case

Although she maintains her claims are meritorious, Plaintiff acknowledges there were substantial risks and uncertainty in proceeding with class certification and eventual trial on the merits. As described in section 2.2.1, *infra*, Aramark presented multiple defenses to Plaintiff's claims, both on the merits and as to class certification. While Plaintiff was prepared to litigate her claims through class certification and ultimately trial, success was far from certain.

### 2. Risk, Expense and Duration of Further Litigation

Although the parties engaged in significant informal and formal discovery, investigation, and class-wide data analysis, they had not completed formal discovery. Lebe Decl., ¶ 20. Preparation for class certification and trial remained for the parties, as well as the prospect of potential appeals. *Id*. Thus, the parties would incur considerably more attorneys' fees and costs through trial. This settlement avoids those risks and accompanying expense. *See In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886, at *3 (N.D. Cal. Nov. 26, 2007) ("inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Thus, this factor favors preliminary approval.

### 3. Risk of Maintaining Class Action Status

Plaintiff had not yet moved for class certification. *Id*. Absent settlement, there was a risk that there would not be a certified class at the time of trial, and that the Settlement Class members would not recover anything. Lebe Decl., ¶¶ 32-39. As discussed *infra*, Aramark asserted several defenses to class certification which raised substantial risks associated with certifying the class. Thus, this factor also supports preliminary approval.

### 4. The Amount of Settlement is Reasonable and Significant

This proposed settlement provides substantial monetary recovery for Settlement Class Members in the face of disputed claims. As detailed below, Plaintiff believes this settlement represents a recovery of about 16.6 percent of the maximum possible value of the claims, excluding PAGA penalties, of $2,761,980.60:

---

preliminary approval of the Settlement, such that notice is given to the Settlement Class Members, Plaintiff will address the eighth factor in the motion for final approval.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

a. Failure to Pay All Minimum and Overtime Wages Based on Failure to Pay for Off-the-Clock Work: **$205,204**

Plaintiff alleges that Aramark underpaid minimum wages due to its practices of requiring its employees to undergo off-the-clock walking time to time clocks, security screenings, temperature checks, health questionnaires, and drug testing. Lebe Decl., ¶ 32. For example, before starting their shifts, Plaintiff has alleged class members were expected to complete a survey regarding their health and be subject to a temperature check, which could take significant time. *Id*. In doing this, class members had to form a line, wait for their turn, and have their temperature taken all while being under Aramark's control. *Id*. Class members could not start their shifts until they completed the mandatory health and temperature screenings and completed their surveys. *Id*.

Moreover, based on Plaintiff's investigations, and Aramark's representations, Aramark provided class members to multiple different prison systems, each of which allegedly had different policies these alleged practices. *Id*. For this reason, the parties agreed to settle these claims as the differing policies between locations would make class certification difficult and this settlement is the best-case scenario for the class members. *Id*.

Plaintiff estimates a maximum possible exposure of $205,204 for these claims. *Id*.

b. Failure to Provide Meal Periods: **$24,732**

Plaintiff contends that Settlement Class members were not provided meal periods as required under California law, and specifically that meal periods were missed, provided late (i.e., beginning after 5 hours of work), or were short during 17.6 percent of shifts, or just under once a workweek. Lebe Decl., ¶ 33. Plaintiff also contends that Aramark failed to provide off-duty, uninterrupted meal breaks, even when meal breaks were recorded by employees. *Id*. However, Plaintiff's investigation revealed that Aramark provided meal period premiums for many of the meal period violations discovered by Plaintiff's expert's analysis of the time records. *Id*. Given the high rate of meal period premiums being paid for meal period violations, Plaintiff believed that the possibility of certifying Plaintiff's meal claim was nominal. *Id*. Aramark also argued that it has always maintained a legally-compliant meal period policy, that it has always provided

meal periods consistent with that policy, and that it is only required to "provide" the opportunity to take meal periods, not "ensure" meal periods are taken. *Id.*; *Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004, 1038 (2012) (rejecting "ensure" standard). Further, Plaintiff's expert analyzed that Aramark issued over 11,000 meal period premiums during the PAGA period, which is evidence that it takes its meal period obligations seriously, and that any missed meals are aberrations, not a result of any Aramark policy or practice. *Id.* Finally, Aramark argues that individualized inquiries would be needed to determine whether each employee missed or took a late meal period on each shift, *why* any given meal period was taken late or missed, and whether the employee validly waived the meal period, thereby making certification of this claim unlikely. *Id.*

Plaintiff estimates a maximum possible exposure of $24,732 for these claims. *Id.*

c.   Failure to Provide Off-Duty Rest Periods: **$866,374**

Plaintiff alleges that Aramark failed to authorize and permit all legally-compliant rest periods throughout the Class Period. Lebe Decl., ¶ 34. Specifically, Aramark required employees to stay on the correctional facility premises for their rest breaks and failed to provide any rest period premiums to either Plaintiff or the class members over the past six years. *Id.* Aramark argues it has always maintained and enforced lawful rest period policies and practices during the Class Period. *Id.* Aramark also maintains that any failure to take rest periods was the result of employee choice, and that it is not required to police rest periods, only to authorize and permit them as established in *Brinker*, *supra*, 53 Cal.4th at 1040 (finding that an employer is not obligated to police meal and rest periods). *Id.* Finally, Aramark contends that Plaintiff's rest period claim is not amenable to class treatment as the disparate policies held by each of the differing prison systems, as discussed above, would make class certification unlikely. *Id.* In addition, individualized inquiries would likely be required to determine which employees failed to take rest periods, and the reasons why each employee failed to take a rest period on a particular shift. *Id.* These considerations are particularly present with respect to rest periods, Aramark argues, as rest periods are not – and need not be – recorded. *Id.*

Plaintiff estimates a maximum exposure of $866,374 for these claims. *Id.*

d.   <u>Failure to Reimburse Business Expenses</u>: **$71,364**

Plaintiff contends that Aramark failed to reimburse Settlement Class members for all business expenses, including for example, the purchase of Personal Protective Equipment ("PPE") such as protective face masks and hand sanitizer as they related to their employment. Lebe Decl., ¶ 35.  However, as Aramark argued and has represented, provided copious amounts of hand sanitizer and other PPE to class members, which makes class members' purchase of such PPE unnecessary and significantly lowers Aramark's overall exposure on this claim.  *Id.*; *see also*, *e.g.*, *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal.4th 554, 568 (2007) ("In calculating the reimbursement amount due under section 2802, the employer may consider not only the actual expenses that the employee incurred, but also whether each of those expenses was 'necessary,' which in turn depends on the reasonableness of the employee's choices").

Plaintiff estimates a maximum exposure of $71,364 for these claims.  *Id.*

e.   <u>Waiting Time Penalties</u>: **$1,089,681.60**

Plaintiff alleges that Aramark is liable for waiting time penalties under Labor Code § 203 to former employees whose employment with Aramark ended since April 6, 2017.  Lebe Decl., ¶ 36.  However, Aramark asserts it has strong defences to the waiting time claim because there exist good-faith disputes as to Plaintiff's underlying claims preclude imposition of penalties.  *Id.*; *see* 8 Cal. Code Regs. § 13520 (a "good faith dispute that any wages are due will preclude imposition of waiting time penalties"); *Kao v. Joy Holiday,* 12 Cal.App.5th 947, 963 (2017) (holding "good faith dispute" over employee's exempt status precluded imposition of waiting time penalties over contested wages).  Aramark further contends that the same class certification and merits defences apply to Plaintiff's derivative waiting time claim.  *Id.*

Plaintiff estimates a maximum exposure of $1,089,681.60 for these claims.  *Id.*

f.   <u>Failure to Provide Accurate Itemized Wage Statements</u>: **$504,625**

As a result of the violations alleged above, Plaintiff alleges that Aramark furnished inaccurate wage statements in violation of Labor Code § 226, resulting in a $50 violation per pay period during the relevant time period.  Lebe Decl., ¶ 37; *see also* Cal. Labor Code § 226(e) (providing for $50 penalty for "initial" violations); *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th

7

1157, 1207 (2008) (finding "initial" violation rate applies until employer is notified it violated a Labor Code provision); *Patel v. Nike Retail Svcs., Inc.*, 58 F.Supp.3d 1032, 1042-43 (N.D. Cal. 2014) (citing *Amaral* and applying "initial" $50 penalty to all pay periods in calculating amount-in-controversy for wage statement claim).

However, Aramark argues that any alleged wage statement violations were not "knowing and intentional," and that Plaintiff cannot show she or other employees "suffer[ed] injury" due to alleged wage statement violations, as required to recover penalties under Section 226(e). Lebe Decl., ¶ 37. Aramark also contends that, because Plaintiff's minimum, overtime, meal period, and rest period claims likely would not survive the class certification stage, neither could Plaintiff support certification on her wage statement penalties. *Id.* Further, Aramark contends its wage statements always accurately reflected amounts *paid* to employees as well as all other required information, precluding liability for wage statement penalties under *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308, 1336-37 (2018) (agreeing with employer's "commonsense position that the pay stubs were accurate in that they correctly reflected the hours worked and the pay received…The purpose of section 226 is to *document* the paid wages to ensure the employee is fully informed regarding the calculation of those wages.") (italics in original). *Id.* Aramark further argues that the same defenses to class certification as to Plaintiff's underlying claims apply equally to her derivative wage statement claims, and that additional individualized inquiries would be needed to determine whether each employee "suffered injury" under Section 226(e). *Id.* Thus, this claim was at severe risk of not being certified, or prevailing on the merits, as it is derivative of the above claims, and given the risk of *Maldonado*.

Plaintiff estimated a maximum exposure of $504,625 for these claims.

g.  <u>PAGA Penalties</u>: $1,031,200

Plaintiff alleges that Aramark is liable for civil penalties derived from the underlying violations discussed herein. Lebe Decl., ¶ 38. As noted above, however, Aramark vigorously disputes each of Plaintiff's underlying claims and argues that the PAGA claim fail because Plaintiff's underlying claims fail. *Id.*; *see Price v. Starbucks Corp.*, 192 Cal.App.4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also

fail."). Aramark also argues that the PAGA claim would not be manageable, since individual inquiries would be needed to determine, *inter alia*, whether employees actually received and/or waived their meal period(s) or rest period(s) on any given shift, and whether each employee was reimbursed for all necessary business expenses. *See Wesson v. Staples the Office Superstore, LLC*, 68 Cal.App.5th 746 (2021) (affirming trial court's striking of PAGA claim, based on unmanageability of PAGA trial due to individualized questions among individual aggrieved employees). Additionally, Aramark maintains that, given its good-faith defences, the Court would substantially reduce any PAGA civil penalties. *Id.*; *see also* Lab. Code § 2699(e)(2) (authorizing reduction in PAGA penalties in court's discretion); *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135 (2012) (affirming reduction of PAGA penalties) (*disapproved on other grounds in ZB, N.A. v. Sup. Ct.*, 8 Cal.5th 175, FN8 (2019)); *Fleming v. Covidien, Inc.*, No. ED CV10-01487 RGK (OPx), 2011 U.S. Dist. LEXIS 154590, at *4 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalties by over 82 percent); *Carrington v. Starbucks Corp.*, 30 Cal.App.5th 504, 529 (2018) (affirming PAGA civil penalty of just $5 per pay period where employer made "good faith attempts" to comply with the law). Moreover, Defendant has argued that such penalties cannot be stacked, and thus the proper method of awarding PAGA penalties would be to simply multiply the number of pay periods, by the default civil penalty of $100. *Id.* Moreover, the PAGA claim presents the biggest risk as the Court could have significantly reduced an award under the PAGA to almost nothing. *Id.* Thus, the valuation of these claims was tempered by the strengths and defenses related to the underlying claims. *Id.*

Plaintiff estimates a maximum exposure of $1,031,200 for the PAGA claims, despite the fact that many courts reduce these claims based on their discretion. *Id.*; *see also Thurman*, *supra*, 203 Cal.App.4th at 1135-36 (affirming reduction of PAGA penalties); *Fleming*, *supra*, 2011 U.S. Dist. LEXIS 154590, at *4 (reducing PAGA penalties by over 82 percent); *Carrington*, *supra*, 30 Cal.App.5th at 529 (affirming PAGA penalty of just $5 per pay period).

h.  <u>Total Class-wide Damages:</u>

Using these figures, Plaintiff found the total, maximum possible value of the claims in this matter to be about $2,257,355.60, if Plaintiff had successfully certified each claim, overcame the

issues of individualized inquiry, and prevailed at trial.  Lebe Decl., ¶ 39.  Thus, the $460,000 Gross Settlement Amount represents approximately 16.6 percent of the total maximum damages at issue in this matter, which is a very good result in light of the numerous challenges this action posed for Plaintiff, outlined above.  *Id.*

The percentage of liability exposure recovered in this case is within the range of percentages routinely approved by courts.  *See*, *e.g.*, *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016) (approving wage and hour class action settlement amounting to 8.1 percent of potential damages); *Dunleavy v. Nadler*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement which represented "roughly one-sixth of the potential recovery"); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial").

Given the tremendous risks involved, especially with class certification, the proposed settlement is well within the range of reasonableness.

### i. Discovery Completed and the Status of Proceedings

The parties engaged in significant investigation, formal discovery, informal class-wide discovery consisting of a random, twenty percent sample of payroll records for the putative class, and analysis prior to reaching the proposed settlement.  *See* Lebe Decl., ¶¶ 20, , 25-26.  As noted above, Aramark provided detailed data regarding Settlement Class Members' compensation, hours worked, and other relevant payroll data, and Plaintiff extensively analyzed the data to come up with various exposure models.  Lebe Decl., ¶¶ 20, 25-26.  It was only after this exchange of comprehensive data and information that the parties participated in a full-day mediation with an experienced wage and hour mediator, engaged in months of post-mediation negotiations, and ultimately reached the proposed settlement by way of a mediator's proposal.  Lebe Decl., ¶ 20. This factor supports preliminary approval.

### j. The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a

settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Here, Plaintiff is represented by experienced wage and hour class action counsel who have significant wage and hour class action experience, and who have successfully served as lead counsel in certifying and settling numerous class actions both in the federal and state courts of California.  *See* Lebe Decl., ¶¶ 3-15.  This factor supports preliminary approval.  *See Gribble v. Cool Transports Inc.*, 2008 U.S. Dist. LEXIS 115560, at *9 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.")

### B.     The Preliminary Approval Standard Is Met

The Court can grant preliminary approval of the Settlement and direct that notice be given if the proposed settlement: (1) falls within the range of possible approval; (2) appears to be the product of serious, informed and non-collusive negotiations; and (3) has no obvious deficiencies. *See Manual for Complex Litigation* (3d ed. 1995) § 30.41.  The Ninth Circuit also has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992).

### 1.     The Settlement is Within the Range of Possible Approval

The proposed settlement reflects a substantial recovery in light of real litigation risks on both merits and certification.  Plaintiff submits that the proposed settlement is within the range of possible approval, such that notice should be provided to the Class Members so that they can consider the settlement.  The Court will have the opportunity to again assess the reasonableness of the settlement after Class Members have had the opportunity to opt-out or object.

### 2.     The Settlement Resulted From Arm's-Length Negotiations

The Settlement is a result of extensive arm's-length negotiation by counsel and is thus entitled to an initial presumption of fairness. *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL DOCKET No. 901 ALL CASES, 1992 U.S. Dist. LEXIS 14337, at *2 (C.D. Cal. June 10, 1992) ("[T]here is typically an initial presumption of fairness where the settlement was negotiated at arm's length.").  Plaintiff thoroughly vetted the claims at issue and conducted extensive factual investigation and legal research and analysis.  Lebe Decl., ¶¶ 20, 25-26.  The

11

parties reached settlement only after mediating with experienced wage and hour mediator Lisa Klerman. Lebe Decl., ¶ 20. The parties accepted Ms. Klerman's proposal, which reflected what she determined to be the fair settlement value of the case, after a full day of mediation and follow-up negotiations. *Id*. The parties then negotiated the details of the settlement for months before finalizing the Settlement. *Id*.

### 3.    The Settlement is Devoid of Obvious Deficiencies

#### a.    Settlement Provides Significant Monetary Recovery

Aramark has agreed to pay a Gross Settlement Amount of $460,000, which shall be distributed to Participating Class Members on a <u>non-reversionary</u> basis. Moreover, no Class Member will be required to submit a claim form to receive a payment. The principal terms of the Settlement are summarized below:

| | |
|---|---|
| Gross Settlement Amount: | $460,000 |
| Minus Court-approved attorney's fees (35 percent): | $161,000 |
| Minus Court-approved costs (up to): | $15,000 |
| Minus Court-approved Service Award: | $15,000 |
| <u>Minus settlement administration costs (up to):</u> | <u>$25,000</u> |
| Net Settlement Amount: | $244,000 |
| <u>Minus Amount paid to LWDA:</u> | <u>$15,000</u> |
| **Total Amount Paid to Settlement Class**: | **$229,000** |

Thus, the Settlement requires Aramark to pay a total of at least **$229,000** to Settlement Class Members. Lebe Decl., ¶ 30. According to Aramark, there are approximately 745 Class Members. *See* Lebe Decl., ¶ 31. Accordingly, the estimated average net individual settlement payment is projected at $307.38. *Id*. This average recovery is in line with or exceeds recoveries in other wage and hour class action settlements.[3]

#### b.    Settlement Formula

The amounts for Court-approved attorney fees, litigation costs, incentive award, administration costs and PAGA payment will be deducted from the Gross Settlement Amount to arrive at the Net Settlement Amount ("NSA"), which will be distributed as follows:

---

[3] *See, e.g., Schiller v. David's Bridal*, 2012 U.S. Dist. LEXIS 80776, at *17 (E.D. Cal. June 11, 2012) (approving wage and hour settlement with average recovery of about $198.70); *Sorenson v. PetSmart, Inc.,* No. 2:06-CV-02674 (E.D. Cal. Dec. 17, 2008) (average recovery of about $60).

$20,000 of the Gross Settlement Amount has been designated the "PAGA Net Settlement Amount." Pursuant to Labor Code § 2699(i), 75 percent of that amount, or $15,000, will be paid to the LWDA, and the remaining $5,000 will be distributed *pro rata* to PAGA Members who were employed by Aramark at any point from June 16, 2020 through and including December 15, 2022 ("PAGA Period"), based on their number of pay periods worked during that period. *See* Settlement, ¶¶ 1.23, 1.24, 3.4.5.

The NSA will be distributed to all Settlement Class Members who do not opt-out of the Settlement (i.e. Participating Class Members), *pro rata* based on their respective number of workweeks worked in the Class Period. *See* Settlement, ¶ 3.4.2.

By taking into account the proportional number of workweeks and pay periods worked by Participating Class Members and PAGA Members, the Settlement formula compensates Participating Class Members based on the extent of their potential injuries and their potential damages as alleged in the Complaint, and is thus fair, adequate, and reasonable.

Participating Class Members will be bound by the Settlement's terms and will release all Released Class Claims. *See* Settlement, ¶¶ 1.28, 3.7.2. Additionally, all PAGA Members (regardless of whether they opt out of the class portion of the Settlement) who worked for Aramark during the PAGA Period will release all PAGA Released Claims. *Id.*, ¶¶ 1.29 and 3.7.3.

The Settlement is <u>non-reversionary</u>. Any portion of the requested attorneys' fee award, the requested Enhancement Award, or amounts requested for Settlement administration that are not approved by the Court shall become part of the Net Settlement Amount. *See* Settlement, ¶¶ 3.4.1 and 3.4.2. Participating Class Members will have one-hundred and eighty (180) days to cash their settlement checks. *Id.*, ¶ 4.10. Amounts from uncashed checks will be transmitted to the State of California, to be held and disposed of by the Controller in accordance with California's Unclaimed Property Law for the benefit of the Participating Class Members and PAGA Members who did not cash the checks until such time that they claim their property. *Id.*

### c.    Incentive Payment, Attorneys' Fees, and Costs

Enhancement payments, also called service awards or incentive payments, "compensate class representatives for work done on behalf of the class, [and] to make up for financial or

reputational risk undertaken in bringing the action." *Cellphone Termination Fee Cases*, 186 Cal. App. 4th at 1394. Plaintiffs "should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the class." *Clark v. Am. Residential Services LLC*, 175 Cal. App. 4th 785, 806 (2009). "Factors to be considered in granting a service award include: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort expended by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Guerrero v. United States Gypsum Co.*, 2022 U.S. Dist. LEXIS 233930, at *21-22 (S.D. Cal. Dec, 30, 2022) (quoting *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, the proposed $15,000 Service Award to Plaintiff is also reasonable. This service award is in recognition of Plaintiff's significant contributions to this case by way of, *inter alia*, providing documents and information, conducting factual research, and participating in the prosecution of this litigation. Plaintiff's requested incentive payment is intended to recognize the time and efforts that she expended for the Class, as well as the substantial risks she undertook in stepping forward as a named plaintiff in a wage and hour class action against a former employer. (Declaration of Tiara Billups-Larkin ("Larkin Decl."), ¶ 15-16.)

Moreover, Plaintiff's counsel will file a motion for attorneys' fees not to exceed 35 percent of the Settlement, and for verified litigation costs of up to $15,000. *See* Lebe Decl., ¶ 40; *see also* Settlement, ¶ 3.4.2. Here, Plaintiff is a prevailing party and entitled to recover her reasonable attorneys' fees and costs because she obtained a successful settlement. *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) ("Litigation that results in an enforceable settlement agreement can confer 'prevailing party' status on a plaintiff."). The Ninth Circuit has explained that "[b]ecause the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Jones v. GN Netcom, Inc. ("In Re Bluetooth")*, 654

1    F.3d 935, 942 (9th Cir., 2011).

2        While the "benchmark" for a reasonable percentage-of-the-fund award in the Ninth

3    Circuit is twenty-five percent, courts may depart either upward or downward if the "special

4    circumstances" of the case justify a departure. *Bluetooth*, 654 F.3d at 942.  An upward departure

5    is often appropriate for smaller class funds below $10 million, particularly when awarding the

6    benchmark would undercompensate counsel for their time spent. *See Craft v. County of San*

7    *Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 Million will often

8    result in fees above 25 percent.")

9        The requested fee is also reasonable because Plaintiff's Counsel achieved significant

10   results for the class, creating a non-reversionary settlement, took on the risk of non-payment by

11   prosecuting the case on a contingency basis, and litigated efficiently because of their expertise in

12   litigating complex wage and hour cases.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-

13   50 (9th Cir. 2002); *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 U.S. Dist. LEXIS

14   166484, at *11 (N.D. Cal. Dec. 11, 2015) (above-market-value fee awards are appropriate in

15   contingency-fee cases where class counsel has significant experience in the type of litigation at

16   issue.)

17       This fee is also appropriate under the lodestar cross check. See *Brawner v. Bank of Am.*

18   *N.A.*, 2016 U.S. Dist. LEXIS 4975, at *12 (N.D.Cal. Jan. 14, 2016) ("After applying the

19   percentage method, courts typically roughly calculate the lodestar as a "cross-check to assess the

20   reasonableness of the percentage award.")   Through preliminary approval, Plaintiff's Counsel

21   will have a lodestar of $186,436.2 for a total 340.1 hours of work, and expect to incur dozens of

22   additional hours of time to bring this case to a close, including: appearing at the preliminary

23   approval hearing; overseeing the notice process, addressing class member inquires and

24   responding to any objections; preparing a final approval motion with supporting declarations from

25   counsel, plaintiffs, and the claims administrator; preparing a motion for fees, costs and

26   enhancements with supporting declarations from counsel and the class representative; appearing

27   at the final approval hearing; and ensuring that the settlement funds are timely and correctly

28   disbursed.  Lebe Decl., ¶¶ 41-46.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

**IV.    THE SETTLEMENT MERITS CERTIFICATION**

**A.    Rule 23(a)(1) Numerosity Is Satisfied**

Numerosity is satisfied because, as stated, there are approximately 745 Class Members. Lebe Decl., ¶ 31.

**B.    Rule 23(a)(2) Commonality Is Satisfied**

Commonality is satisfied because there are common questions of fact and law arising from Settlement Class Members' employment with Aramark, such as Aramark's failure to pay overtime or minimum wages, reimburse necessary business expenses, provide accurate wage statements, or to provide meal and rest periods – all of which Plaintiff contends arise from a common core of facts, including whether or not such meal and rest periods had to be taken on-premises, and thus not compliant with the California Labor Code, as discussed above.  Lebe Decl., ¶¶ 17-18.

**C.    Rule 23(a)(3) Typicality Is Satisfied**

"Under [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Here, Plaintiff's claims are typical of the Settlement Class. Plaintiff was employed by Aramark as a non-exempt employee in California during the Class Period and was subjected to Aramark's uniform policies and practices.  Lebe Decl., ¶¶ 16-18.  As the proposed Settlement Class consists only of other non-exempt employees like Plaintiff, specifically those also in the same correctional services line of business, and because Plaintiff's claims stem from Aramark's policies and practices that applied uniformly to Settlement Class Members, typicality is satisfied.

**D.    Rule 23(a)(4) Adequacy Is Satisfied**

Plaintiff is an adequate class representative under Rule 23(a)(4).  To satisfy this requirement, Plaintiff and her counsel must not have conflicts of interest with the proposed Class and must vigorously prosecute the action on behalf of the Class. *See Hanlon*, *supra*, 150 F.3d at 1020.  Here, there is no conflict of interest between Plaintiff and the proposed Settlement Class consisting of other non-exempt employees.  Lebe Decl., ¶ 21.  Moreover, as detailed above, the

proposed settlement reflects a substantial recovery of Settlement Class Members' alleged damages.  Given the relatively small amounts at issue for each individual Settlement Class Member, Plaintiff asserts it is unlikely any Settlement Class Member, especially a current employee, would have pursued these claims individually.  *See Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims. Thus, class certification is also the superior method of adjudication."). Plaintiff's counsel also have no conflicts with Settlement Class Members, and are adequate to represent the Settlement Class given their skills, qualifications, and experience.  Lebe Decl., ¶¶ 3-15, 21.

### E. Rule 23(b)(3) Predominance Is Satisfied

Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication by [class action] representation." *Amchem v. Windsor*, 521 U.S. 591, 623 (1997). Because Plaintiff seeks certification for settlement purposes only, however, manageability of trial need not be considered.  *Id.* at 620.  As all proposed Settlement Class Members were allegedly deprived of overtime wages and minimum wages, suffered meal and rest period violations, and/or suffered the other wage and hour violations described herein due to Aramark's uniform policies and practices, the proposed Settlement Class is "sufficiently cohesive" since a "common nucleus of facts" and "potential legal remedies" dominate.  *See Hanlon*, *supra*, 150 F.3d at 1022.

### F. The *Bluetooth* Factors Are Satisfied

Moreover, in addition to the factors described above, this Court must also review this settlement under the factors described in *In Re Bluetooth*, which requires courts to scrutinize attorneys' fee agreements in class action settlements for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations … ."  *In re Bluetooth*, 654 F.3d at 947.  *In Re Bluetooth* identified three major signs of potential attorney collusion: (1) "when counsel receives a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed upon attorney's fee; and (3) when the

agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class." *Briseño v. Henderson*, 998 F.3d 1014, at *6 (9th Cir. 2021).

However, as described above, class counsel only seeks a maximum fee award of 1/3 of the value of the settlement, which is in line with what is commonly provided in California class action matters like this case. Settlement at ¶ 3.3.1. The settlement also is silent on whether Defendant may generally oppose Plaintiff's attorneys fees' request, but does provides expressly that "Defendant reserves the right to challenge Class Counsel's requests for fees and costs if the requests exceed the parameters established by this Stipulation." Settlement, ¶ 3.4.2. Finally, the settlement provides that any unawarded fees go back to the class rather than Defendant Aramark. Settlement, ¶ 3.4.2.

As a result, this settlement passes scrutiny under *In Re Bluetooth*.

## V.   THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS

Due process requires that notice be provided to class members by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

Here, Plaintiff proposes that the settlement be administered by Phoenix Settlement Administrators, an experienced class action settlement administrator, which will mail the proposed Class Notice to the Settlement Class. *See* Lebe Decl., ¶ 24. The proposed Class Notice advises Class Members of the key terms of the Settlement and uniform 45-day deadline to opt-out, file a dispute, or file an objection, and also provides a summary of the alleged claims, explains the recovery formula and expected recovery amount for each member of the Settlement Class, provides contact information for Class Counsel, and notifies them of the date for the final approval hearing. *See* Settlement, Exhibit D.

///

///

///

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

**VI.    CONCLUSION**

Plaintiff respectfully requests that the Court grant this Motion for Preliminary Approval for the reasons discussed herein.

Dated:  May 18, 2023                                **LEBE LAW, APLC**


                                                    By:    /s/ Jonathan M. Lebe
                                                           Jonathan M. Lebe
                                                           Zachary T. Gershman
                                                           Attorneys for Plaintiff Tiara Billups-Larkin

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL