UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIARA BILLUPS-LARKIN,<br><br>    Plaintiff,<br><br>v.<br><br>ARAMARK SERVICES, INC.,<br><br>    Defendant. | Case No. 21-cv-06852-RS<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

## I. INTRODUCTION

In 2021, Plaintiff filed this putative wage and hour class action against Defendant Aramark Services, Inc. ("Aramark"), in state court alleging violations of California law. Defendant thereafter removed, and the parties proceeded with informal discovery and engaged in private mediation. The parties have arrived at a settlement agreement, under which Aramark will pay a gross amount of $460,000 to resolve these claims. Plaintiff now moves for preliminary certification of a Settlement Class pursuant to Federal Rule of Civil Procedure 23(e). This motion is suitable for disposition without oral argument, *see* Civil L.R. 7-1(b), and the hearing scheduled for July 20, 2023, is vacated. For the reasons discussed below, the motion is granted.

## II. BACKGROUND

Plaintiff filed this action in Alameda County Superior Court in June 2021, raising a number of wage and hour claims including failure to pay minimum wages, failure to pay overtime wages, failure to provide meal periods and rest breaks, and failure to reimburse business expenses.

Several of the allegations stemmed from work conditions appearing to have arisen due to the COVID-19 pandemic. For instance, Plaintiff alleged that Defendant subjected its employees to temperature screenings and health checks without compensation, and that Defendant failed to reimburse employees for personal protective equipment. Defendant timely removed to federal court, and Plaintiff thereafter filed an amended complaint, adding a claim under the California Private Attorneys General Act ("PAGA"), Cal. Lab. Code. § 2699.

The parties then engaged in informal discovery and a full-day private mediation session, and they eventually arrived at the proposed Settlement Agreement. Under the Agreement, Defendant will pay a non-reversionary gross amount of $460,000 to the Settlement Class. The Settlement Class is defined as "[a]ll current and former non-exempt employees who worked for Defendants for the Corrections line of business at any time between December 19, 2016, and December 15, 2022 in the State of California." Dkt. 29 ("Mot."), at 1. From this gross amount, Plaintiff proposes to deduct up to $161,000 for attorney fees, up to $15,000 in costs, a $15,000 service award, and $25,000 in settlement administration costs. In addition, $20,000 has been designated as the "PAGA Net Settlement Amount," and, pursuant to Cal. Lab. Code § 2699(i), 75% shall be paid to the California Labor and Workforce Development Agency ("LWDA"). This leaves $229,000 for the Class, which is to be divided proportionally among the roughly 745 members based on their respective number of workweeks and pay periods worked. Plaintiff estimates that Class members will receive, on average, about $308 each. In exchange, the Class members shall release all claims that were raised in this action or that could have been raised along "the same alleged facts, legal theories or statutory violations." Dkt. 29-3, Ex. D ("Settlement Agreement") ¶¶ 1.28–.29.

### III. LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy that favors settlements" in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Under Rule 23(e), parties may seek approval of classes "proposed to be certified for the purposes of settlement." Fed. R. Civ. P. 23(e). First, the proposed settlement class must meet the criteria for certification under

Rule 23(a) — that is, numerosity, commonality, typicality, and adequacy — as well as one of the Rule 23(b) categories. Here, Plaintiff relies on Rule 23(b)(3), which permits certification of a class where "questions of law or fact common to class members predominate over any questions affecting only individual members, and [where] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "When determining whether to certify a class for settlement purposes, a court must pay 'heightened' attention to the requirements of Rule 23," given the lack of opportunity to evaluate and adjust the class as the litigation proceeds. *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 689 (1997)).

Under Rule 23(e), courts must also determine whether the settlement agreement is "fair, adequate, and reasonable to all concerned." *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019). This requires assessing the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). When the settlement takes place "before formal class certification, settlement approval requires a higher standard of fairness." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (internal quotation marks omitted). The Northern District of California has also adopted additional procedural guidance for evaluating proposed settlements.

Procedurally, parties must first seek preliminary approval of their settlement agreement. This step primarily evaluates whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Haralson*, 383 F. Supp. 3d at 966 (quoting *In re Tableware Antitrust*

1  *Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). *But see Cotter v. Lyft, Inc.*, 193 F. Supp. 3d
2  1030, 1036 (N.D. Cal. 2016) (questioning the rationale for conducting a "lax" inquiry at the
3  preliminary approval stage). If preliminary approval is granted, notice is distributed to the class
4  members and a final hearing is held to determine whether the settlement satisfies Rule 23(e)(2).

## IV. DISCUSSION

Upon review of Plaintiff's motion, the proposed Settlement Class meets the criteria for certification under Rules 23(a) and 23(b)(3). Further, the proposed Settlement Agreement appears fair, adequate, and reasonable. As such, the motion will be granted.

Looking first to the Rule 23(a) and 23(b)(3) requirements, all are met here. As noted above, the Class comprises approximately 745 members, thus easily satisfying the numerosity requirement. The Class members are also united by common questions of law and fact, including the impacts from Aramark's workplace policies and protocols. For the most part, such questions also predominate over individual ones, because the policies are alleged to have applied uniformly to all Class members. These types of averments are "generally sufficient" to satisfy the Rule 23(b)(3) predominance requirement in this context. *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 322 (N.D. Cal. 2013) (collecting cases). It should be noted, however, that the overtime and minimum wage claims appear less readily susceptible to common proof. As Plaintiff concedes, Defendant "provided class members to multiple different prison systems, each of which allegedly had different policies." Mot. at 5. Nevertheless, looking at the claims as a whole, it appears that "common issues predominate over varying factual predicates." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 473 (E.D. Cal. 2009); *cf. Amchem*, 521 U.S. at 623–25 (noting proposed class of consumers harmed by asbestos was insufficiently cohesive based on varied exposure, medical expenses, etc.). Finally, Plaintiff herself was subject to the policies in question, rendering her typical; and there appear to be no conflicts of interest or other deficiencies that would preclude her from being an adequate representative.

The proposed settlement further satisfies Rule 23(e). Plaintiff acknowledges at the outset that this case posed "substantial risks and uncertainty," both in obtaining class certification and

United States District Court
Northern District of California

winning on the merits. Mot. at 4. In addition to presenting twenty-nine affirmative defenses, Defendant contested Plaintiff's averments — arguing, for instance, that it provided all required meal periods and that its policies were fully compliant with its legal obligations. It is thus eminently reasonable for Plaintiff's counsel to have concluded that entering settlement negotiations was prudent. *See Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198-EMC, 2016 WL 5907869, at *7–8 (N.D. Cal. Oct. 11, 2016). Similarly, since this case is still in its early stages, litigating this case to judgment would have required going through formal discovery, class certification, and possibly a trial, the costs of which could be avoided through settlement. The fact that Plaintiff is represented by counsel with "significant wage and hour class action experience," further weighs in favor of preliminary approval. *See* Dkt. 29-3, Decl. ¶ 8. Finally, the settlement amount (which is "perhaps the most important factor to consider," *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016)) represents roughly 16.6% of the maximum recovery in this case. Plaintiff describes as "a very good result in light of the numerous challenges this action posed." Mot. at 10. Indeed, while one could view this more pessimistically as an 83.4% *discount*, this outcome is nonetheless fair and reasonable, and it exceeds other settlements approved by Ninth Circuit district courts in terms of both percentage and amount. *E.g.*, *Viceral*, 2016 WL 5907869, at *7–8 (settlement worth 8.1% of the full verdict value was justified given the "enormous risks on the merits"); *Schiller v. David's Bridal, Inc.*, No. 10-cv-00616-AWI-SKO, 2012 WL 2117001, at *13 (E.D. Cal. June 11, 2012) (approving settlement with average award of $198.70 per class member).

The Settlement Agreement further presents no obvious deficiencies. Plaintiff proposes ceilings of $161,000 and $15,000 for attorney fees and costs, respectively. While approving these expenses will require closer scrutiny, they appear reasonable on their face; in fact, Plaintiff's counsel presently asserts a fee lodestar of $186,436.20, or a 0.86 multiplier. *Cf. Viceral*, 2016 WL 5907869, at *10 (expressing concern over "potentially over-generous" fee award with 2.0 multiplier). The service award also appears reasonable in light of the hardships incurred by Plaintiff herself in the course of this litigation. Dkt. 29-4 ¶ 15. In any event, the fact that the

1  settlement is non-reversionary means that "[a]ny portion of the request attorneys' fee award, the
2  requested [service award], or amounts requested for Settlement administration that are not
3  approved by the Court shall become part of the Net Settlement Amount." Mot. at 13. This
4  provision thus helps ensure the Class members ultimately retain the benefit of this bargain. There
5  are no indications that any particular Class members have been favored via this settlement; that the
6  settlement requires Class members to forfeit claims not encompassed in this action, *e.g.*, *Haralson*,
7  383 F. Supp. 3d at 967–69; or that the settlement was anything other than the product of "arm's
8  length, non-collusive, negotiated resolution." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965
9  (9th Cir. 2009). The parties have also complied with the Northern District's procedural guidelines.
10 *See* Dkt. 29-5.

11 Finally, the PAGA payment, while small, is also reasonable. As noted, Plaintiff proposes
12 to designate $20,000 of the gross settlement amount as the PAGA payment. This is roughly 1.9%
13 of the total value of the PAGA claim, which Plaintiff represents (without elaboration) as being
14 valued at $1,031,200. Compared with the 16.6% overall recovery, this constitutes a very steep
15 discount. However, it is still greater than the 1% threshold that many courts in this Circuit have
16 identified as inherently concerning. *See Haralson*, 383 F. Supp. 3d at 972–73 (collecting cases).
17 Moreover, this reduction makes sense in the context of the strengths and weaknesses of the case as
18 a whole, and the likelihood that the PAGA penalties would be significantly reduced were this case
19 litigated to completion. *See, e.g.*, *Skavkov v. Fast Water Heater Partners I, LP*, No. 14-cv-04324-
20 JST, 2017 WL 3834873, at *2 (N.D. Cal. July 25, 2017). Thus, the proposed PAGA payment is
21 reasonable and fair, and LWDA will have an opportunity to address its concerns with the payment,
22 if any, in advance of final approval.

23 **V. CONCLUSION**

24 Plaintiff has demonstrated that the proposed Settlement Agreement is fair, adequate, and
25 reasonable, and that the Settlement Class may be certified under Rule 23. As such, the motion is
26 granted. The following Settlement Class is certified:

> All current and former non-exempt employees who worked for Defendants for the Corrections line of business at any time between December 19, 2016, and December 15, 2022, in the State of California.

Tiara Billups-Larkin is preliminarily appointed as the Class representative for the purposes of settlement; and Jonathan M. Lebe and Zachary Gershman of Lebe Law, APLC, are preliminarily appointed as Class Counsel for the same. The Settlement Agreement as submitted by Plaintiff is preliminarily approved. Phoenix Settlement Administrators is appointed as the Settlement Administrator.

The proposed Class Notice and the notice procedures outlined by the parties are approved, and notice shall be disseminated to the Settlement Class members pursuant to the terms of the Settlement Agreement. Settlement Class members will have forty-five days after the date on which the Settlement Administrator mails the Class Notice to opt-out, submit a dispute, or object to the Settlement, as described in the Settlement Agreement and the Class Notice. A final hearing is scheduled for Thursday, December 7, 2023, at 1:30 p.m. As soon as practicable, the parties shall file on the public docket a final implementation schedule reflecting the correct dates for each of these events as well as a briefing schedule for (1) the motion for final approval and (2) any motion for attorney fees and costs. *See* Dkt. 29-1, at 3.

**IT IS SO ORDERED**.

Dated: July 17, 2023

_____
RICHARD SEEBORG
Chief United States District Judge