Jonathan M. Lebe (State Bar No. 284605)
Jon@lebelaw.com
Zachary Gershman (State Bar No. 328004)
Zachary@lebelaw.com
**Lebe Law, APLC**
777 S. Alameda Street, Second Floor
Los Angeles, CA 90021
Telephone: (213) 444-1973
Facsimile: (213) 457-3092

Attorneys for Plaintiff Tiara Billups-Larkin,
individually and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tiara Billups-Larkin, individually and on behalf of all others similarly situated,<br><br>                   Plaintiff,<br><br>   vs.<br><br>Aramark Services, Inc.,<br><br>                 Defendant. | Case No.: 3:21-cv-06852-RS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Declaration of Jonathan M. Lebe; [Proposed] Order; and [Proposed] Judgment Filed Herewith]<br><br><u>Hearing Information:</u><br>Judge:  Hon. Richard Seeborg<br>Date:    January 25, 2024<br>Time:   1:30 p.m.<br>Dept.:   3<br><br>Complaint Filed:   June 16, 2021<br>Trial Date:          None Set |

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on January 25, 2024 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 3 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Richard Seeborg, Plaintiff Tiara Billups-Larkin ("Plaintiff") as an individual and on behalf of all others similarly situated, will and hereby does move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e) and 29 U.S.C. § 216(b):

1. Finally certifying the proposed Settlement Class under Rule 23(e) of the Federal Rules of Civil Procedure;
2. Granting final approval to the class and representative action settlement based upon the terms set forth in the Settlement Agreement as fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;
3. Confirming Plaintiff's appointment as Class Representative for settlement purposes;
4. Confirming the appointment of Lebe Law, APLC as Class Counsel for settlement purposes; and
5. Entering final judgment in the form of the proposed Final Judgement and Order Granting Final Approval filed herewith.

///
///
///
///
///
///
///
///

This motion is made on the grounds that the proposed Settlement, which was preliminarily approved by this Court on July 17, 2023, is the product of arm's-length, good-faith negotiations, is fair and reasonable to the Class and should now be finally approved, as more fully discussed in the accompanying Memorandum in Support of Final Approval of Class Action Settlement and Entering Final Judgment.

This motion is based on this Notice; the accompanying Memorandum of Points and Authorities in support; Declaration of Class Counsel Jonathan M. Lebe; previously-filed Declaration of Plaintiff Tiara Billups-Larkin; previously-filed Declaration of Lluvia Islas on behalf of Phoenix Settlement Administrators Regarding Notice and Settlement Administration; the proposed Order Granting Final Approval of Class Action Settlement; the proposed Final Judgment; the Settlement Agreement; all other pleadings, declarations, and other papers on file in this action; and any oral argument or other matter that may be considered by the Court.

Respectfully submitted,

Dated:  December 21, 2023          **LEBE LAW, APLC**

By:     _/s/ Jonathan M. Lebe_
Jonathan M. Lebe
Zachary T. Gershman
Attorneys for Plaintiff Tiara Billups-Larkin,
Individually and on behalf of all others similarly
situated

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.................................2

   A.   Plaintiff's Claims Against Defendant and Procedural History ................2

III.  SUMMARY OF THE SETTLEMENT AND NOTICE PROCESS ............4

   A.   Settlement Class Definition ................................................................4

   B.   Monetary Terms of the Settlement........................................................5

   C.   Summary of Notice Process....................................................................5

IV.  THE SETTLEMENT WARRANTS FINAL APPROVAL .........................7

   A. The Settlement Is Fair, Adequate, and Reasonable..............................7

      1.   The Strength of Plaintiff's Case ....................................................8

      2.   Risk, Expense, Complexity, and Duration of Further Litigation.........12

      3.   Risk of Maintaining Class Action Status................................................12

      4.   Amount Offered in Settlement Is Reasonable Given the Realistic Value
           of Plaintiff's Claims in Light of the Significant Litigation Risks................12

      5.   Discovery Completed and the Stage of the Proceedings .....................13

      6.   The Experience and Views of Counsel.....................................................13

      7.   The Reaction of the Class Members to the Proposed Settlement ........14

V.   THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS
     PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED .........14

VI.  CONCLUSION ...................................................................................15

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**CASES**

*Brinker Restaurant Corp. v. Superior Court,* 53 Cal. 4th 1004 (2012) ...................8

*Carrington v. Starbucks Corp.,* 30 Cal. App. 5th 504 (2018) ................................11

*Fleming v. Covidien, Inc.*, No. ED-CV-10-1487-RGK(OPx), 2011 WL 7563047

    (C.D. Cal. Aug. 12, 2011) ................................................................................11

*Gattuso v. Harte-Hanks Shoppers, Inc*., 42 Cal. 4th 554 (2007) ............................9

*Hanlon v. Chrysler Corp*., 150 F.3d 1011 (9th Cir. 1998) ......................................7

*In re Heritage Bond Litig.*, 546 F.3d 667 (9th Cir. 2008) .......................................7

*In re Omnivision Techs., Inc*., 559 F.Supp. 2d 1036 (N.D. Cal. 2008) ..................13

*In re Pacific Enterprises Securities Litig.*, 47 F.3d 373 (9th Cir. 1995) ................13

*In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201

    (N.D. Cal. 2007) ..............................................................................................12

*In re Syncor ERISA Litigation*, 516 F.3d 109 (9th Cir. 2008)..................................7

*In re Wells Fargo Loan Processor Overtime Pay Litig.*, MDL Docket No. C-07-

    1841 (EMC), 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ................................14

*Kao v. Joy Holiday*, 12 Cal. App. 5th 947 (2017) .................................................10

*Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308 (2018)......................10

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) ...........................14

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)

    ...............................................................................................................12, 14

*Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136 (2011) .....................................10

*Schiller v. David's Bridal, Inc.,* Case No. 1:10-cv-616-AWI-SKO, 2011 WL

    2117001 (E.D. Cal. 2012) ................................................................................15

*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112 (2012) ..........11

*Wesson v. Staples the Office Superstore, LLC*, 68 Cal. App. 5th 746 (2021) .........11

**STATUTES**

Labor Code § 2699(e)(2) .......................................................................................11

**RULES**

Fed. R. Civ. Proc. 23(e)...................................................................................7

**REGULATIONS**

Cal. Code Regs., tit. 8 § 13520.......................................................................10

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Tiara Billups-Larkin ("Plaintiff"), individually and on behalf of the proposed Settlement Class, respectfully requests final approval of the Class and Private Attorneys General Act ("PAGA") Representative Action Settlement Agreement ("Settlement"), entered into by and between Plaintiff and Defendant Aramark Services, Inc. ("Defendant Aramark" or "Defendant").[1]

The Settlement provides for a non-reversionary Gross Settlement Amount of $460,000 to the following Settlement Class, which is comprised of 844 Participating Class Members:

> All current and former non-exempt employees who worked for Defendants for the Corrections line of business at any time between December 19, 2016 and December 15, 2022 in the State of California.

Payments from the Net Settlement Amount shall be paid to all Participating Class Members *pro rata* based on each Participating Class Member's number of workweeks worked during the Class Period.

This Settlement came to fruition only after extensive formal and informal discovery; robust legal research and analysis; extensive investigation by the Parties and by Class Counsel; the exchange of extensive class-wide data and analysis of that data; arm's-length settlement negotiations at a private mediation session with Lisa Klerman, Esq., an experienced wage and hour class action mediator; as well as extensive negotiations after the mediation, which eventually led to the Settlement.

In its July 7, 2023, Order granting Plaintiff's Motion for Preliminary Approval, this Court preliminarily found that "the proposed Settlement Class meets the criteria for certification under Rules 23(a) and 23(b)(3)… [and] the proposed Settlement Agreement appears fair, adequate, and reasonable." Dkt. No. 32, at p.

---

[1] The Settlement Agreement is attached as Exhibit A to the Declaration of Jonathan M. Lebe ("Lebe Decl.").

4.  Since this Court granted preliminary approval on July 7, 2023, nothing has changed to impact the propriety, fairness, adequacy, and reasonableness of the Settlement.  In fact, since Notice of the proposed Settlement was provided to the Settlement Class via U.S. first class mail on August 22, 2023, the response of the Settlement Class members has been extremely positive: not a single Settlement Class member has objected to the Settlement and only two have requested exclusion from the Settlement, resulting in a **99.76%** participation rate.[2]  *See* Declaration of Lluvia Islas on Behalf of Phoenix Settlement Administrators Regarding Notice and Settlement Administration ("Islas Decl."), at ¶¶ 9, 17[3].

As explained below, the Court should grant Plaintiff's motion in its entirety because the Settlement Class continues to meet the requirements for class certification for settlement purposes under Fed. R. Civ. Proc. 23, and the Settlement warrants final approval because it is a fair, adequate, and reasonable compromise of the disputed claims in this case.

In light of the foregoing, Plaintiff respectfully submits that the Court should enter the concurrently-filed Order Granting Final Approval and separately-drafted Judgment submitted herewith.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Claims Against Defendant and Procedural History

On June 16, 2021, Tiara Billups-Larkin submitted her PAGA notice to the Labor Workforce Development Agency.  Lebe Decl., ¶ 20.  On the same day, she filed her original Complaint in Alameda Superior Court.  *Id.*  The original Complaint alleged causes of action as a class action for violations of the California Labor code and applicable IWC Wage Order: (1) Failure to Pay Minimum Wages in Violation

---

[2] The opt-out and objection deadline for most class members ran on October 6, 2023.  However, on September 15, 2023, it came to the Parties' attention that the data provided to Phoenix Settlement Administrators by Defendant was erroneous and some aggrieved employees were either not a part of the initial PAGA list or needed their PAGA pay period counts corrected.  The corrective mailing was completed on October 10, 2023.  For the 461 Class Members who were re-mailed notices, the deadline to opt-out or object ran on October 24, 2023.

[3] This declaration was filed in support of Plaintiff's Motion for Attorneys Fees, Dkt. No. 37.

of Cal. Labor Code §§ 1194, 1194.2, and 1197; (2) Failure to Pay Overtime Wages in Violation of Cal. Labor Code §§ 510, 1194, and 1198; (3) Unlawful Deduction of Wages in Violation of Cal. Labor Code § 221; (4) Failure to Provide Meal Periods in Violation of Cal. Labor Code §§ 226.7 and 512; (5) Failure to Provide Rest Breaks in Violation of Cal. Labor Code § 226.7; (6) Failure to Provide Accurate Itemized Wage Statements in Violation of Cal. Labor Code § 226; (7) Failure to Reimburse All Business Expenses in Violation of Cal. Labor Code §§ 2800 and 2802; (8) Failure to Timely Pay All Wages Due Upon Separation of Employment in Violation of Cal. Labor Code §§ 201-203; and (9) Violation of Business and Professions Code §§ 17200, *et seq*. *Id*.

On September 2, 2021, Aramark filed its Notice of Removal to the Northern District of California. (Dkt. No. 1.) On December 8, 2021, the parties jointly stipulated to allow Plaintiff to file a First Amended Class and Representative Action Complaint, adding a cause of action for civil penalties pursuant to PAGA, and removing the Doe defendants in accordance with pleading standards in the Northern District Court of California. (Dkt. No. 17.) On December 28, 2021, Aramark filed its Answer to Plaintiff's First Amended Class and Representative Action Complaint. (Dkt. No. 22.)

On September 9, 2022, after months of engaging in robust legal research and analysis, extensive investigation by the parties and by Class Counsel, the exchange of extensive class-wide data and analysis of that data, motion practice, and extensive litigation where preparation for class certification and trial remained for the parties, as well as the prospect of potential appeals, the parties participated in an arm's-length mediation with Lisa Klerman, Esq., an experienced wage and hour class action mediator. Lebe Decl., ¶ 22. Although the case did not settle at mediation, Ms. Klerman made a mediator's proposal that was ultimately accepted by the parties. *Id*. The parties participated in extensive negotiations over the following months to finalize the finer points of the Settlement Agreement that is

now before the Court. *Id.*

On May 18, 2023, Plaintiff filed her Unopposed Motion for Preliminary Approval of Class Action Settlement. Lebe Decl., ¶ 23. On July 17, 2023, the Court granted preliminary approval of the Settlement without any hearing necessary. *Id.*

On August 22, 2023, the Court-approved Notice was provided to 844 Settlement Class members, and Settlement Class members had until October 6, 2023, to submit objections, disputes, and to opt-out of the Settlement. Lebe Decl., ¶ 24; Islas Decl., ¶¶ 3, 9-11. On September 15, 2023, it came to the Parties' attention that the data provided to Phoenix Settlement Administrators by Defendant required correction because some PAGA Members were inadvertently omitted from the initial PAGA list and some PAGA Members needed their PAGA pay period counts corrected. Lebe Decl., ¶ 24. The corrective mailing was completed on October 10, 2023. Lebe Decl., ¶ 24; Islas Decl., ¶ 13. For the 461 Class Members who were re-mailed notices, the deadline to opt-out or object ran on October 24, 2023. Lebe Decl., ¶ 24.

As of the date of this filing, there have been no objections and only two exclusions, resulting in a 99.76% participation rate. Lebe Decl., ¶ 25; Islas Decl., ¶¶ 9, 17. Now that the Notice process is complete, Plaintiff respectfully submits the Settlement for final approval.

## III.    SUMMARY OF THE SETTLEMENT AND NOTICE PROCESS

### A. Settlement Class Definition

The Settlement Class encompasses "all current and former non-exempt employees who worked for Defendants for the Corrections line of business at any time between December 19, 2016, and December 15, 2022, in the State of California." Lebe Decl., ¶ 28; *see* Settlement, § 1.4, Exhibit A; Dkt. No. 32, p. 7.

///

///

### B. Monetary Terms of the Settlement

The Settlement provides for Defendant to pay a non-reversionary Gross Settlement Amount of $460,000.00. Lebe Decl., ¶ 28; Settlement § 3.3. The Net Settlement Amount ("NSA") is the amount remaining from the Gross Settlement Amount after deducting requested attorneys' fees ($161,000.00) and verified litigation costs ($11,984.89), proposed Class Representative Service Award to Plaintiff ($15,000.00), Settlement Administration fees ($14,250.00), and the PAGA Payment ($20,000.00). Based on these requested amounts, the NSA is estimated to be approximately $237,765.11. Lebe Decl., ¶ 28, Exhibit E; Islas Decl., ¶ 16.

The $20,000 PAGA Payment shall be allocated as follows: 75% shall be distributed to the LWDA and 25% to the PAGA Members, *pro rata* based on their Eligible Pay Periods during the PAGA Period. Lebe Decl., ¶ 28, Exhibit E; Settlement, §§ 1.23, 1.24, 3.4.5. The Net Settlement Amount will be paid to all Participating Class Members, *pro rata*, based on each Participating Class Member's number of Eligible Workweeks during the Class Period. Lebe Decl., ¶ 28, Exhibit E; Settlement, § 3.4.4.

Payments to Settlement Class members from the Net Settlement Amount will be classified 66.66% as penalties and interest to be reported on a IRS Form 1099-MISC, and 33.33% as wages to be reported on a IRS Form W-2. *See* Lebe Decl., ¶ 29; Settlement, § 3.5.1. Individual PAGA Payments to the PAGA Members shall be treated as 100% as penalties and reported on an IRS Form 1099-MISC. Lebe Decl., ¶ 29; Settlement, § 3.5.2. Defendant's share of employer payroll taxes shall be paid by Defendant separately and in addition to the Gross Settlement Amount. Lebe Decl., ¶ 29; Settlement, § 3.5.1.

### C.    Summary of Notice Process

On August 1, 2023, Defendant provided the Settlement Administrator, Phoenix Settlement Administrators ("Phoenix") with the names, social security numbers, last known mailing addresses, and the total number of applicable

workweeks for all 844 Settlement Class members. Islas Decl., ¶ 3. As part of the preparation for mailing, all 844 names and addresses contained in the Class List were then processed against the National Change of Address ("NCOA") database, for purposes of updating and confirming the mailing addresses of the Settlement Class Members before mailing of the Notice Packet. *Id*., at ¶ 4. To the extent that an updated address was found in the NCOA database, the updated address was used for the mailing of the Notice Packet. *Id*. To the extent that no updated address was found in the NCOA database, the original address provided by Defendant was used for the mailing of the Notice Packet. *Id*.

After performing address updates and verifications, Phoenix mailed the Notice Packet (consisting of the Notice of Pending Class and Representative Action Settlement ("Class Notice") and Request for Exclusion Form) to the 844 Settlement Class Members on August 22, 2023. Islas Decl., ¶ 6, Exhibit A. Following the initial mailing, 33 Notice Packets were returned to Phoenix as undeliverable. *Id*., at ¶ 7. As a result of a skip trace or forwarding address provided by the Post Office, 26 Notice Packets were re-mailed. *Id*. As of the date of filing this final approval motion, there are a total of 9 Notice Packets that remain undeliverable because there was no forwarding address and/or no new address could be located through skip trace. *Id*., at ¶ 8.

On September 15, 2023, it came to the Parties' attention that the data provided to Phoenix Settlement Administrators by Defendant required correction because some PAGA Members were inadvertently omitted from the initial PAGA list and some PAGA Members needed their PAGA pay period counts corrected. Lebe Decl., ¶ 24. The corrective mailing was completed on October 10, 2023. Lebe Decl., ¶ 24; Islas Decl., ¶ 13.

Most Settlement Class Members had until October 6, 2023, to submit objections, requests for exclusion, and disputes. Islas Decl., ¶¶ 9-11. For the 461 Class Members who were re-mailed corrected notices on October 10, 2023, the

1  deadline to opt-out or object ran on October 24, 2023.  Lebe Decl., ¶ 24.  **There**
2  **were no objections submitted and two Settlement Class Members elected to**
3  **opt-out of the Settlement.**  Lebe Decl., ¶ 25.  Accordingly, Participating Class
4  Members will receive an estimated average gross payment of $282.05, with the
5  estimated highest gross payment being $1,348.05.  Islas Decl., ¶ 17.  PAGA
6  Members will receive an estimated average gross payment of $8.90, with the
7  estimated highest gross payment being $28.32.  Islas Decl., ¶ 18.

8  **IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL**

9          A class action can be "settled, voluntarily dismissed, or compromised only
10 with the court's approval."  *See* Fed. R. Civ. Proc. 23(e).  Thus, in order to approve
11 a proposed settlement, the Court must conclude that the proposed settlement is "fair,
12 adequate and reasonable," and is the product of arm's-length and informed
13 negotiations.  *See In re Heritage Bond Litig.*, 546 F.3d 667, 674 (9th Cir. 2008).  In
14 the Ninth Circuit, "there is a strong judicial policy that favors settlement,
15 particularly where complex class action litigation is concerned."  *See In re Syncor*
16 *ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citation omitted).

17         **A. The Settlement Is Fair, Adequate, and Reasonable**

18         In determining whether a proposed class action settlement is "fair,
19 reasonable, and adequate," the Court must balance a number of factors: the strength
20 of plaintiffs' case; the risk, expense, complexity and likely duration of further
21 litigation; the risk of maintaining class action status through trial; the amount
22 offered in settlement; the extent of discovery completed and the stage of
23 proceedings; the experience and views of counsel; the presence of a government
24 participant; and the reaction of the class members to the proposed settlement."
25 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Plaintiff addresses
26 each relevant factor below.[4]

27

28 ───────────────────
   [4] Because there are no government participants in the instant lawsuit, Plaintiff has omitted the seventh factor from
   discussion.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

## 1. __The Strength of Plaintiff's Case__

While Plaintiff maintains her claims are meritorious, Plaintiff acknowledges that Defendant presented multiple defenses. These defenses—and their accompanying risks—were discussed at length in Plaintiff's Motion for Preliminary Approval. *See* Dkt. No. 29. Plaintiff recounts some of these risks below.

As detailed in Plaintiff's Motion for Preliminary Approval, there is a significant risk of non-certification and/or not prevailing on the merits with respect to each of Plaintiff's claims. For example, with respect to Plaintiff's minimum and overtime wages claim based on failure to pay for off-the-clock work, Defendant contends that it provided Class Members to multiple different correctional facilities, each of which allegedly had different practices and the differing practices between locations would make class certification difficult. Dkt No. 29-1 (Declaration of Jonathan M. Lebe in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement), at ¶ 32. As such, Defendant asserts that this claim is not amenable to class certification as individualized inquiries would be required to determine whether each employee performed off-the-clock work on a particular shift and at a particular location, and whether Defendant was aware that such work was being performed. *Id.*

With respect to Plaintiff's meal period claim, Defendant argues it provided meal period premiums for many of the meal period violations discovered by Plaintiff's expert's analysis of the time records. *Id.*, at ¶ 33. Given the high rate of meal period premiums being paid for meal period violations, the possibility of certifying Plaintiff's meal claim was nominal. *Id.* Defendant also argued that it has always maintained a legally-compliant meal period policy, that it has always provided meal periods consistent with that policy, and that it is only required to "provide" the opportunity to take meal periods, not "ensure" they are taken. *Id.*; *see also Brinker Restaurant Corp. v. Superior Court,* 53 Cal. 4th 1004, 1038 (2012) (rejecting "ensure" standard). Further, Plaintiff's expert analyzed that Defendant

issued over 11,000 meal period premiums during the PAGA period, which is evidence that it takes its meal period obligations seriously, and that any missed meals are aberrations, not a result of any Aramark policy or practice. Dkt No. 29-1, at ¶ 33. Finally, Defendant argues that individualized inquiries would be needed to determine whether each employee missed or took a late meal period on each shift, *why* any given meal period was taken late or missed, and whether the employee validly waived the meal period, thereby making certification of this claim unlikely. *Id*.

With respect to Plaintiff's rest period claim, Defendant argues it has always maintained and enforced lawful rest period policies and practices during the Class Period. *Id*., at ¶ 17. Defendant also maintains that any failure to take rest periods was the result of employee choice, and that it is not required to police rest periods, only to authorize and permit them as established in *Brinker*, *supra*, 53 Cal. 4th at 1040 (finding that an employer is not obligated to police meal and rest periods). *Id*. Finally, Defendant contends that Plaintiff's rest period claim is not amenable to class treatment as the disparate policies held by each of the differing prison systems, as discussed above, would make class certification unlikely. *Id*. In addition, individualized inquiries would likely be required to determine which employees failed to take rest periods, and the reasons why each employee failed to take a rest period on a particular shift. *Id*. These considerations are particularly present with respect to rest periods, Defendant argues, as rest periods are not – and need not be – recorded. *Id*.

With respect to Plaintiff's failure to reimburse business expenses claim, Defendant argues and has represented that it provided copious amounts of hand sanitizer and other Personal Protective Equipment ("PPE") to Class Members, which makes Class Members' purchase of such PPE unnecessary and significantly lowers Defendant's overall exposure on this claim. *Id*., at ¶ 35; *see also*, *e.g*., *Gattuso v. Harte-Hanks Shoppers, Inc*., 42 Cal. 4th 554, 568 (2007) ("In calculating

the reimbursement amount due under Section 2802, the employer may consider not only the actual expenses that the employee incurred, but also whether each of those expenses was 'necessary,' which in turn depends on the reasonableness of the employee's choices.").

With respect to Plaintiff's final wage payment and wage statement claims, Defendant argues that it possesses strong, good faith defenses to Plaintiff's underlying claims, thus precluding recovery of waiting time penalties, which are only available for the "willful" failure to pay wages. Dkt No. 29-1, at ¶ 36; *see* Cal. Code Regs., tit. 8, § 13520 (a "good faith dispute that any wages are due will preclude imposition of waiting time penalties"); *Kao v. Joy Holiday*, 12 Cal. App. 5th 947, 963 (2017) (holding "good faith dispute" over employee's exempt status precluded imposition of waiting time penalties over contested wages). Defendant further contends that any alleged wage statement violations could not be shown to be "knowing and intentional," particularly given its good-faith defenses; that Plaintiff cannot show she or other employees "suffer[ed] injury" due to alleged wage statement violations, as required by Lab. Code § 226(e); and that wage statements always accurately reflected amounts *paid* to employees. Dkt No. 29-1, at ¶ 37; *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1337 (2018) ("The purpose of section 226 is to 'document the paid wages to ensure the employee is fully informed regarding the calculation of those wages'"). Defendant further argues that the same defenses to class certification as to Plaintiff's underlying claims apply equally to her derivative final wage payment and wage statement claims, and that additional individualized inquires would be needed to determine whether each employee "suffered injury" under Section 226(e). Dkt No. 29-1, at ¶ 37.

With respect to Plaintiff's PAGA claim, Defendant contends that the PAGA claim fails because the underlying claims fail. Dkt No. 29-1, at ¶ 38; *see Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1147 (2011) ("Because the underlying

causes of action fail, the derivative UCL and PAGA claims also fail."). Defendant also argues that the PAGA claim would not be manageable, since individual inquiries would be needed to determine whether employees actually received and/or waived their meal or rest period(s) on any given shift, and whether each employee was reimbursed for all necessary business expenses. Dkt No. 29-1, at ¶ 38; *see Wesson v. Staples the Office Superstore, LLC*, 68 Cal. App. 5th 746 (2021) (affirming trial court's striking of PAGA claim, based on unmanageability of PAGA trial due to individualized questions among individual aggrieved employees). Defendant also asserts that this Court would utilize its discretion under Labor Code section 2699(e)(2) to significantly reduce any PAGA civil penalties, in light of Defendant's good-faith defenses. Dkt No. 29-1, at ¶ 38; *see* Labor Code § 2699(e)(2) (authorizing reduction in PAGA penalties in trial court's discretion); *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1135 (2012) (affirming reduction of PAGA penalties); *Fleming v. Covidien, Inc.*, No. ED-CV-10-1487-RGK(OPx), 2011 WL 7563047 at *4 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalties from $2.8 million to $500,000); *Carrington v. Starbucks Corp.,* 30 Cal. App. 5th 504, 529 (2018) (affirming PAGA penalty of just $5 per pay period where employer made "good faith attempts" to comply with the law). Moreover, Defendant has argued that such penalties cannot be stacked, and thus the proper method of awarding PAGA penalties would be to simply multiply the number of pay periods, by the default civil penalty of $100. Dkt No. 29-1, at ¶ 38. Moreover, the PAGA claim presents the biggest risk as the Court could have significantly reduced an award under the PAGA to almost nothing. *Id.* Thus, the valuation of these claims was tempered by the strengths and defenses related to the underlying claims. *Id.*

These considerations not only bore heavily on the Parties' negotiations, but also confirm that the Settlement is a fair and reasonable compromise in view of the risk of further litigation. Indeed, "[i]n most situations, unless the settlement is

clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quotations omitted). Thus, this factor supports final approval.

### 2.     Risk, Expense, Complexity, and Duration of Further Litigation

Although the parties engaged in significant informal and formal discovery, investigation, and classwide data analysis, they had not completed formal discovery. Dkt No. 29-1, at ¶ 20. Preparation for class certification and trial remained for the parties, as well as the prospect of potential appeals. *Id.* Thus, the parties would incur considerably more attorneys' fees and costs through trial. This settlement avoids those risks and accompanying expense. *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. 2007) ("inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Thus, this factor favors of final approval.

### 3.     Risk of Maintaining Class Action Status

Plaintiff had not yet moved for class certification. Dkt No. 29-1, at ¶ 20. Absent settlement, there was a risk that there would not be a certified class at the time of trial, and that the Settlement Class members would not recover anything. *Id.*, at ¶ 32-39. As discussed *infra*, Defendant asserted several defenses to class certification which raised substantial risks associated with certifying the class. Thus, this factor also supports final approval.

### 4.     Amount Offered in Settlement Is Reasonable Given the Realistic Value of Plaintiff's Claims in Light of the Significant Litigation Risks

As discussed in detail in Plaintiff's Motion for Preliminary Approval, the non-reversionary $460,000.00 Gross Settlement Amount is reasonable given the realistic value of Plaintiff's claims and the risks inherent in pushing those claims

1  forward. *See* Dkt. No. 29.  Moreover, as discussed above, the risks that attended to

2  Plaintiff's claims further demonstrate the reasonableness of the Settlement.  As this

3  Court found in its Preliminary Approval Order, that "the proposed Settlement Class

4  meets the criteria for certification under Rules 23(a) and 23(b)(3)… [and] the

5  proposed Settlement Agreement appears fair, adequate, and reasonable."  Dkt. No.

6  32, at p. 4.  Nothing has changed since that time to call the Court's determination

7  into question.  Moreover, given the amount recovered in this action, with Settlement

8  Class members on average receiving $282.05 each, the amount recovered in this

9  Settlement favors final approval.

10  ### 5.    Discovery Completed and the Stage of the Proceedings

11      The parties engaged in significant investigation, formal classwide discovery,

12  informal classwide discovery, and analysis prior to reaching the proposed

13  settlement. *See* Dkt No. 73-1, ¶¶ 11-12; Dkt No. 73-2, ¶¶ 17-18. As noted above,

14  Aramark provided detailed data regarding Settlement Class Members' timekeeping

15  and payroll data, its relevant wage and hour policies, and Plaintiff extensively

16  analyzed the data to come up with various exposure models. *Id.* It was only after

17  this exchange of comprehensive data and information that the parties participated

18  in a full-day mediation with an experienced wage and hour mediator, engaged in

19  post-mediation negotiations, and ultimately reached the settlement by way of a

20  mediator's proposal. *Id*. This factor supports final approval.

21  ### 6.    The Experience and Views of Counsel

22      The recommendations of Plaintiff's counsel are given a presumption of

23  reasonableness. *See, e.g., In re Omnivision Techs., Inc*., 559 F.Supp. 2d 1036, 1043

24  (N.D. Cal. 2008).  "Parties represented by competent counsel are better positioned

25  than courts to produce a settlement that fairly reflects each party's expected

26  outcome in litigation." *In re Pacific Enterprises Securities Litig*., 47 F.3d 373, 378

27  (9th Cir. 1995).  Here, Plaintiff is represented by experienced wage and hour class

28  action counsel who have significant wage and hour class action experience, and

who have successfully served as lead counsel in certifying and settling numerous class actions both in federal and state courts of California. *See* Dkt No. 29-1, at ¶¶ 3-15. This factor strongly supports final approval. *See, e.g., In re Wells Fargo Loan Processor Overtime Pay Litig.*, MDL Docket No. C-07-1841 (EMC), 2011 WL 3352460 at *8 (N.D. Cal. Aug. 2, 2011) ("When experienced counsel conclude that a proposed settlement agreement is fair, such a conclusion is entitled to great weight.") (quotation omitted).

### 7.    The Reaction of the Class Members to the Proposed Settlement

A court may infer that a class action settlement is fair, adequate, and reasonable when few class members object. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal 2004).

Here, the class member response to the Settlement has been overwhelmingly positive. Not a single Class Member has objected to the Settlement and only two elected to opt-out of the Settlement, resulting in a **99.76%** participation rate. *See* Islas Decl., ¶¶ 9, 17. The overwhelmingly positive reaction of the Settlement Class Members to the Settlement supports final approval.

## V.    THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED

In its July 17, 2023, order granting preliminary approval, this Court certified the Settlement Class for settlement purposes. *See* Dkt. No. 32. Because circumstances have not changed, and for the reasons set forth in her Motion for Preliminary Approval (Dkt. No. 29), Plaintiff requests that the Court finally certify the Class for settlement purposes. *See Schiller v. David's Bridal, Inc.,* Case No.

1:10-cv-616-AWI-SKO, 2011 WL 2117001 at *8 (E.D. Cal. 2012) ("As initially determined in the Court's preliminary approval order and as set forth above, the Rule 23(a) requirements for class certification have been satisfied.").

**VI.    CONCLUSION**

For the reasons set forth herein, Plaintiff respectfully requests that the Court grant this Motion in its entirety and enter the order granting final approval of the settlement filed concurrently herewith.

Respectfully submitted,

Dated: December 21, 2023          **LEBE LAW, APLC**

By:     */s/ Jonathan M. Lebe*
Jonathan M. Lebe
Zachary T. Gershman
Attorneys for Plaintiff Tiara Billups-Larkin,
Individually and on behalf of all others similarly
situated